IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JESSICA VERSCHELDEN, | ) |
| *Plaintiff,* | ) |
| vs. | ) Case No: |
| KAW VALLEY USD 321 | ) |
| | ) **Jury Trial Demanded** |
| Serve: Registered Agent | ) |
| 1100 SW Wanamaker Rd.. STE 103 | ) |
| Topeka, KS 66604 | ) |
| *Defendant.* | ) |

## COMPLAINT

Plaintiff Jessica Verschelden ("Plaintiff"), by and through his undersigned counsel, for his Complaint against Kaw Valley USD 321 (Defendant), states and alleges as follows:

### Nature of Action

1. This is an action for legal and equitable relief to address the deprivation of Plaintiff's civil rights based on sex discrimination, including a hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, U.S.C.A. § 2000e *et seq*. (Title VII).

### Parties

2. Plaintiff is an individual and a resident of Topeka, Kansas.

3. At all times pertinent to this Complaint, Plaintiff was an employee within the meaning of the Title VII.

1

4. Defendant Kaw Valley USD 321 is a domestic for-profit corporation licensed to do business in the State of Kansas and can be served by serving its Registered Agent at the address set forth in the caption.

5. At all times relevant hereto, Defendant Kaw Valley USD 321 is an employer governed by Title VII.

6. On information and belief, Kaw Valley USD 321 employs (and at all times relevant has employed) more than 200 employees.

## Jurisdiction and Venue

7. The claims alleged arise out of Plaintiff's employment with Defendant at its St. Mary's, Kansas at 411 West Langley Street.

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claim arises under the laws of the United States.

9. This Court has general personal jurisdiction over Defendant because it is subject to service of process in the State of Kansas and has affiliations with the State of Kansas that are so continuous and systematic as to render it essentially at home in this State. This Court has specific personal jurisdiction over Defendant because the claim against it arises out of its acts in the State of Kansas that were purposefully directed at a resident of this State, including the commission of tortious acts.

10. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claim against Defendants occurred in this judicial district.

## Administrative Procedures

11. Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about **October 23, 2024**. A true and correct copy of his charge is attached as **Exhibit A** and is incorporated herein by reference.

12. The EEOC issued Plaintiff a Notice of Right to Sue for all charges on **April 24, 2025.** A true and correct copy of those notices are attached as **Exhibit B** and are incorporated herein by reference.

13. This lawsuit has been timely filed with this Court, and Plaintiff has fully complied with all administrative prerequisites before filing this action.

## General Allegations

1. Plaintiff began her career with Defendant in November 2019 as a cook and was quickly promoted to Kitchen Manager by April 2020.

2. Plaintiff was placed under the supervision of Nate Wood.

3. Plaintiff worked for several years with very few complications, and no disciplinary actions or complaints from her coworkers, but was made to suffer belittling comments by Mr. Wood throughout her employment.

4. Specifically, Mr. Wood would refer to the women who worked in the kitchen as "hens" when they would voice complaints during work.

5. In fact, Mr. Wood has a history of making disparaging remarks such as:

    a. making fun of female employees for eating;

    b. Telling Plaintiff's daughter that it was good to see her learning "women's work" when she was helping do dishes, and;

    c. Commenting on a female employee's age in a negative manner, by remarking on Patti Paff's gray hair.

3

6. Mr. Wood did not treat male employees in the same manner.

7. This sort of unprofessional behavior was prevalent throughout Plaintiff's employment and finally came to a head due to the very first disciplinary meeting between Mr. Wood and Plaintiff.

8. On August 5th, 2024, at about 8:30 am, Plaintiff was pulled into a meeting by Mr. Wood and Kerry Lacok, the superintendent of the school.

9. The meeting began well enough, with Mr. Wood telling Plaintiff how quick and effective her work was, and how great of a job she did.

10. But then, Mr. Wood told Plaintiff he'd noticed a change in her happiness.

11. Mr. Wood then read off the write-up he held detailing that an employee was upset with how Plaintiff spoke to her.

12. It was not lost on Plaintiff that this particular employee babysits and has a close personal relationship with Mr. Wood.

13. Regardless, this write up came as a surprise to Plaintiff.

14. Plaintiff asked Mr. Wood what was needed from her, and Mr. Wood responded she needed to be "happy, helpful, and friendly."

15. At this point, Mr. Lacok asked "Do you agree with this?"

16. Plaintiff responded, "To some, but not most of it"

17. Plaintiff went on to say she would be professional and would change as she was asked.

18. Mr. Lacok told her at the end of the meeting that she could come to him if she ever had any problems.

19. Plaintiff decided to take Mr. Lacok at his word, and soon after, scheduled a meeting with him to discuss some concerns she had regarding her being written up.

20. On August 9th, 2024, around 9:00 am, Plaintiff had her meeting with the superintendent.

21. Plaintiff explained that the employees that had complained about her had been employees she had reprimanded for their job performances, and that Mr. Wood was never there to see what was actually going on.

22. Plaintiff went on to tell the superintendent that most of her unhappiness was directly caused by Mr. Wood and his unprofessional behavior and that she needed some help reigning him in a little.

23. Plaintiff explained how Mr. Wood had constantly demeaned the women in the kitchen by calling them names, and several other instances of unprofessional and outright hostile behavior.

24. Mr. Lacok was, of course, quick to ask why Plaintiff had never come forward before, and she answered him by saying that she was scared of how Mr. Wood might respond, and what he might do, in other words, scared of retaliation.

25. Plaintiff then related an instance where an employee named Jenna (last name unknown) was yelling loudly while on a phone call in the middle of the kitchen about how "she (Jenna) needed to hurry up and get out of here before the fucking cult members[1] blocked her in."

26. As this was in an area with many religious people with certain sensibilities, Plaintiff thought she should report this action to Mr. Wood since he was her direct supervisor.

27. Mr. Wood was less than helpful in response, and began yelling at Plaintiff shouting that "maybe she (Plaintiff) would feel better if she said fuck, and that she (Jenna) was right they are a fucking cult.", before storming out and continuing to bellow.

---

[1] Referring to a separate religious school that had an activity near Kaw Valley that day.

28. Plaintiff told Mr. Lacok that after that instance, she was afraid to tell Mr. Wood anything or interact with him for very long, even going to the point of not sitting in her office while he was at work.

29. Plaintiff also told Mr. Lacok that everyone knew that if you got on Mr. Wood's bad side, he would make you pay and push you out.

30. Plaintiff originally believed that her meeting with Mr. Lacok had gone well, and that things would hopefully be worked out regarding Mr. Wood, but immediately after Mr. Wood's attitude towards her began to shift.

31. During the short time between Plaintiff's August 9th meeting and her illegal termination on August 16th, Mr. Wood began to cut Plaintiff out of pertinent information, such as dietary and allergy restrictions for students, in an attempt to make her seem incompetent.

32. Mr. Wood would constantly stalk around and glower at Plaintiff while she worked even going so far as to hide behind poles to attempt to catch her doing something wrong.

33. Mr. Wood also began pulling other employees aside to discuss what Plaintiff was doing.

34. Mr. Wood then told Plaintiff that Mr. Lacok wanted her to begin filling out a Time Study every fifteen minutes as a P.I.P.

35. Asking a kitchen manager, or any employee to record their time every fifteen minutes is clearly meant to harass and set an employee up for failure.

36. Plaintiff was obviously frustrated with being made to stop every fifteen minutes to write down what she was doing.

37. Plaintiff had been filling out her Time Studies diligently for several days, and found them to be cumbersome and disruptive to her work.

38. On Friday August 16th, 202, Plaintiff asked Mr. Wood how long Mr. Lacok meant for her to continue this P.I.P., and Mr. Wood responded, "I don't know."

39. Plaintiff was dissatisfied with that answer, so she decided to take the matter to Mr. Lacok directly via an email around 10:00 am.

40. The rest of the day passed quietly, then at the end of the day, Mr. Wood asked Plaintiff come into the conference room for a meeting.

41. When Plaintiff arrived, Mr. Wood was already joined by another person, Kristy Dyche, a clerk who worked in the school district.

42. Mr. Wood immediately dove into the meeting saying, "Jessica, you know you had a write-up on Monday the 5th, and then you went to Mr. Lacok ,which you are able to do but now I can't trust you because of it. And if we don't have trust, I have to let you go and part ways."

43. Plaintiff was of course shocked and asked, "So this is not about my work?".

44. Mr. Wood continued to repeat that she went to Mr. Lacok , which she could do, but he didn't trust her.

45. Plaintiff tried to get clarification on what she had done wrong, as she had made the changes asked for in her write-up and had been doing everything asked of her.

46. Mr. Wood told her that she does do everything, and that it wasn't about her work and that he didn't trust her.

47. Plaintiff's employment was terminated in an act of retaliation because of her sex and complaints of discrimination and a hostile work environment.

## Count I
## Sex Discrimination, including Hostile Work Environment under Title VII

1. Plaintiff incorporates by reference all paragraphs and allegations in this Complaint as though fully set forth herein.

2. Plaintiff is a female who was subjected to discrimination because of her sex.

3. Plaintiff was subjected to disparate treatment by Defendant, including but not limited to: being subjected to a hostile work environment and ultimately being terminated based upon her sex, despite her qualifications and performance.

4. Defendant's discrimination against Plaintiff based on her sex was sufficiently severe or pervasive that it altered the terms or conditions of her employment and created an abusive working environment.

5. Plaintiff's sex was a motivating factor for Defendant's actions.

6. Defendant's conduct was outrageous, intentional, willful, or shows an evil motive or reckless indifference or conscious disregard for Plaintiff's rights and rights of others, and therefore Defendant is liable for punitive damages for punishment and deterrence purposes.

7. As a result of Defendant's conduct, Plaintiff has suffered and will continue to suffer damages, including lost wages, benefits, and other monies wrongfully taken from her, and emotional distress.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant on Count I of her complaint, finding that she has been subjected to unlawful sex discrimination and harassment in violation of Title VII, for an award of compensatory and punitive damages, and for her reasonable attorneys' fees, costs, pre- and post-judgment interest as allowed by law, and for such other and further relief as this Court deems just and proper, including equitable relief.

### Count II
### Retaliation under Title VII

8. Plaintiff incorporates by reference all paragraphs and allegations in this Complaint as though fully set forth herein.

9. Plaintiff opposed and reported unlawful discrimination in the workplace by bringing these issues to management and/or Human Resources including but not limited to Jennifer Kelly.

10. Plaintiff's opposition to and reports of discrimination in the workplace constituted protected activities.

11. By reason of Plaintiff's opposition and reports, Defendant retaliated against Plaintiff, by including but not limited to terminating Plaintiff's employment.

12. Plaintiff's opposition to and reports of discrimination were causally connected and a motivating factor for Defendant's adverse actions.

13. Defendant's conduct was outrageous, intentional, willful, or shows an evil motive or reckless indifference or conscious disregard for Plaintiff's rights and right of others, and therefore Defendant is liable for punitive damages for punishment and deterrence purposes.

14. As a result of Defendant's conduct, Plaintiff has suffered and will continue to suffer damages, including lost wages, benefits, and other monies wrongfully taken from her, and emotional distress.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant on Count II of her complaint, finding that she has been subjected to retaliation in violation of Title VII, for an award of compensatory and punitive damages, and for her reasonable attorneys' fees, costs,

pre- and post-judgment interest as allowed by law, and for such other and further relief as this Court deems just and proper, including equitable relief.

## Prayer for Relief

WHEREFORE, Plaintiff, Jessica Verschelden, respectfully requests that this Court enter judgment against Defendant Kaw Valley USD 321 on Counts I and II for actual and special damages including emotional distress, back pay and benefits with interest, reinstatement or front pay and benefits, punitive damages, attorneys' fees and costs incurred, and for such other and further relief as the Court deems just and necessary.

## Demand for a Jury Trial

Plaintiff hereby demands a trial by jury on all claims and issues so triable.

## Designated Place of Trial

Plaintiff, by and through counsel, hereby designates the United States District Court for the District of Kansas at Kansas City as the place of trial.

Respectfully Submitted,

**BROWN, CURRY & DUGGAN, LLC**

_____
Sarah J. Duggan
Daniel G. Curry
Kansas Federal Bar Number #79092
1600 Genessee STE 956

        Kansas City, Missouri 64101
        Ph: 816-756-5458
        Attorneys for Plaintiff
        sduggan@brownandcurry.com
        dan@brownandcurry.com